Bullard, J.
The plaintiff sues to recover $4395, the amount of a number of bank notes issued by the defendants, an incorporated bank of the state of Mississippi. The suit commenced by attachment, but the defendants appeared by counsel, and answered by a general denial, and by averring, that none of their property had been attached.
Thereupon Ingraham & Reed, residing in the state of Mississippi, intervened, and alleged in their petition that, by an act duly executed in that state, in the month of February, 1842, and by subsequent acts, the defendants conveyed and transferred to them as assignees, for the use and benefit of all the creditors of said defendants, their whole property, including that attached in this case, all which, before the institution of this suit, was delivered to them, as the plaintiff and the garnishees were well informed. They, therefore, oppose the plaintiff’s demand, and claim the property attached.
The plaintiff answered the petition of intervention, by denying generally the allegations therein, and then avers, that by the law of the state of Mississippi, where the Bank was chartered and is located, all banks are by law prohibited from assigning any evidence of indebtedness; and he denies that the interve-nors have, by virtue of the assignment made to them, any interest or title to, or in the property in dispute in this suit. He avers, that the assignment is illegal, void and made in bad faith on the part of the Bank, for the purpose of defrauding a portion of their creditors and of favoring others.
The deed of assignment purports to convey, transfer, set over, and assign to the intervenors, all the property, rights and credits whatever belonging to the corporation, except certain notes and *200 bills set forth in a schedule, amounting to about $4400, which are reserved. The assignment is believed to be in the usual form, and for the uses and trusts set forth in the petition of intervention.
It is contended, that this assignment is void on two grounds: first, because by a statute of the state of Mississippi, passed in 1840, which we had occasion to consider in the case of Hyde and another v. The Planters Bank of Mississippi, decided in July, 1844, (8 Robinson,) and again at the present term, in the case of Williams v. The Planters Bank of Mississippi and others, ante, p. 125, the banks’ of that state are forbidden to transfer and assign their notes, bills, or other evidences of debt; and secondly, because it gives illegal preferences, and is in fraud of the rights of creditors. We shall consider the question only under the first aspect here presented, to wit, whether the act of 1840 prohibits a general assignment by a bank, so far at least as concerns its chose in action.
We are not aware, that the courts of our sister and neighboring state have pronounced upon this question. We are, therefore, left without their aid, in deciding upon the extent to which the act alluded to, takes away the right of banking corporations to make a general assignment. In order to come to a conclusion satisfactory to our own minds upon this point, it is proper to consider together the law of that state, applicable it is believed, to all banking corporations, and which has been incorporated into the amendment of the charter of the Bank now before us, that they shall at all times, be obligated to redeem their notes in specie and receive them in payment of all demands, and that which absolutely forbids them to assign and transfer their notes, or other evidences of debts due to them, passed since the general discomfiture of those institutions. When viewed together, these positive provisions of law clearly indicate the policy of the state to be, to modify, so far as it relates to banks, the general rule of law that the assignee takes the debtor credit transferred, subject to any equity which existed previous to notice of such assignment. Those institutions had flooded the country with paper money, which they were no longer able to redeem, and if permitted to transfer, or assign their port-folios, so as to enable their assignee to reco *201 ver aud be paid in gold and silver, unless the debtor could show that he had the notes of the bank, so assigning before notice according to the general rule, it would have entailed great losses on the people, and at the same time have enabled the banks, to pay their depositors, or other favored creditors, in preference to their circulation. The remedy would not have been co-extensive with the mischief, if, while the assignment of a particular chose in action was forbidden, it had been permitted to make a general assignment of all it possessed of that species of property. The right to make such general assignment according to the law in Mississippi, as we understand it, implies the right on the part of the corporation, in common with other debtors in failing circumstances, to discriminate between different classes of creditors. Now, although according to the tenor of this assignment; a fair distribution may have been contemplated, and provision made for receiving the notes of the Bank in payment, yet according to the pretensions of the Bank, they had a right to make a general assignment like any other debtor. The statute forbidding the assignment goes further than we have found it necessary to go. It declares that the assignee cannot maintain any action on an assign•ment, but that it shall be sufficient ground for abatement. If the promissory note of A., transferred by the Bank, would not become the property of the assignee so as to enable him to maintain an action upon it, we cannot perceive, how it would become valid by a simultaneous transfer of all the other choses in action, belonging to the assignor, and authorize such assignee to maintain an action upon it. The prohibition appears to us to apply to each and every chose in action, whether assigned separately or in mass ; and while it leaves the banks the right to recover at law in suits in their own names, it does not impair the right which . each debtor of the banks has to pay at all times in the currency, which they have respectively put in circulation as money.
The judgment of the District Court was against the interve-nors ; and the plaintiff recovered the amount sued for, and the in-tervenors and the Bank appealed. In this court the defendants and the intervenors pleaded the prescription of one year, in support of the assignment made by the Grand Gulf Railroad and Banking Company to the intervenors.
*202 The prescription upon which the appellants rely, is that which bars the revocatory action after the lapse of one year. But in the case now before us, the assignees seek to avail themselves of the assignment by way of intervention, and therein become plaintiffs or actors ; and the illegality or fraudulent character of the contract is set up by way of exception. It is precisely as if the intervenors had sued as assignees, and the defendant had pleaded the nullity or fraud. Now, although the direct action might be prescribed and barred in one year, yet at whatever period the party seeks to enforce such a contract, the exception will avail him, against whom it is sought to be enforced. Qua temporalia sunt ad agendum, perpetua sunt ad excipiendum. Until the contract alleged to be fraudulent is sought to be enforced, the party affected has no interest in opposing it. We had occasion to consider this maxim and its proper application, in the case of Delahoussaye v. Dumartrait, 16 La. 91. It has been applied in numerous cases, where the vendors of slaves sue to recover the price, and the defence of redhibitory vices or defects has been permitted, long after the direct redhibitory action had been prescribed. The plea is, therefore, overruled.
It is further contended by the counsel for the appellants, that the act of 1840, forbidding the transfer of choses in action, only gives to the debtor, when sued by the assignee, the right to cause the action to abate upon his plea, by showing in evidence upon the trial that the same was so transferred, and that the creditors of the Bank have no right to set up such a ground of defence.* But we are of opinion, that the first clause of the act containing the prohibition is not controlled by the second, which indicates the plea -which will avail the debtor when sued by the assignee for the recovery of the debt. If the credit did not pass by the assignment, a creditor who has levied an attachment upon it, may well plead the illegality of the transfer by which his privilege is sought to be defeated.

Judgment affirmed.

 The act of 21 February, 1840, provides:
Sect. 7. That it shall not be lawful for any bank in this state to transfer, by endorsement or otherwise, any note, bill receivable, or other evidence of debt; and if it shall appear in evidence upon the trial of any action upon any such note, bill receivable, or other evidence of debt, that the same was so transferred, the same shall abate upon the plea of the defendant.